UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES DENT, #214488,

          Petitioner,

                                        CASE NO. 14-CV-13272
v.                                   HON. JOHN CORBETT O'MEARA

DAVID BERGH,

          Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT
OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

## I.     Introduction

       This is a habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner James Dent

("Petitioner") was convicted of possession with intent to deliver between 50 and 450 grams of

cocaine, possession of less than 25 grams of heroin, felon in possession of a firearm, and possession

of a firearm during the commission of a felony following a jury trial in the Oakland County Circuit

Court. He was sentenced to concurrent terms of 12 to 40 years imprisonment, two to eight years

imprisonment, and seven months to 10 years imprisonment, and to a consecutive term of two years

imprisonment, on those convictions in 2008. In his petition, he raises claims concerning the search

and seizure of evidence, the conduct of the prosecutor, and the effectiveness of trial and appellate

counsel. For the reasons set forth, the Court denies the petition for a writ of habeas corpus. The

Court also denies a certificate of appealability and denies leave to proceed in forma pauperis on

appeal.

## II.     Facts and Procedural History

Petitioner's convictions arise from a raid of his residence and vehicles in Pontiac, Michigan in 2007. Respondent has provided a summary of the relevant trial testimony, which the Court adopts to the extent that it is consistent with the record. Those facts are as follows:

Law enforcement obtained search warrants for several residences, including a residence used by Dent. Officer Daniel Main, during his pre-raid surveillance of the home, observed Dent at the residence three or four times. (10/1/08 Tr. at 10-11, 100.) On a couple of occasions, Officer Main observed Dent leave the residence in a gray Ford Explorer. (10/1/08 Tr. at 11-12.)

Police Officer Charles Janczarek, a member of the Pontiac Police Department at the time of Dent's crimes and an expert recognized by the trial court, testified that he participated in narcotics-related searches. (9/25/08 Tr. at 157-59.) On March 24, 2007, Officer Janczarek participated in the execution of a search warrant at 240 South Anderson in Pontiac. (9/25/08 Tr. at 160.) He observed three individuals outside the residence, including Dent. (9/26/08 Tr. at 20.)

After the house was secured, Officer Janczarek went back outside where he searched Dent. (9/26/08 Tr. at 23.) Dent had $129 and a key ring with several keys. (9/26/08 Tr. at 23-24.) Dent acknowledged that he knew the police were going to come to the house because his brother had been arrested. (9/26/08 Tr. at 24.) Dent admitted that the Ford Explorer parked in the driveway contained a press and the Cadillac contained a grinder. (9/26/08 Tr. at 24.) Dent admitted that he owned the Cadillac. (9/26/08 Tr. at 26-27.) A search of the Law Enforcement Information Network and the Cadillac's registration and proof of insurance confirmed Dent's statements. (9/26/08 Tr. at 26, 28.) The keys on the key ring recovered from his person matched the vehicles. (9/26/08 Tr. at 27.) Documents within the vehicles connected Dent to both the Explorer and the Cadillac and the address of 240 South Anderson. (9/26/08 Tr. at 30-32.)

In the Cadillac, Officer Janczarek found a grocery bag containing fifty-eight grams of cocaine. (9/26/08 Tr. at 33-34.) The vehicle search also revealed an electronic coffee grinder, two flour sifters, and plastic bags with suspected heroin residue. (9/26/08 Tr. at 35-38, 40-42.) In the very back of the Explorer, there was a "three ton press." (10/1/08 Tr. at 30.) Officer Main, an expert in narcotics investigations and trafficking, testified that the press would be used to package narcotics into bulk form. (10/1/08 Tr. at 8, 50.)

During his search of the Explorer, Officer Main found two "lottery folds" with heroin on them in a cup holder. (10/1/08 Tr. at 14-17.) A lottery fold is a small piece of lottery ticket folded to form a small pouch. (10/1/08 Tr. at 14.) He also found a black case that contained a digital scale and a plastic container. (10/1/08 Tr. at 18.)

According to Officer Main, typically, digital scales are used to weigh narcotics. (10/1/08 Tr. at 19.) The plastic container turned out to be the top to the electric grinder that was found in the Cadillac. (10/1/08 Tr. at 20.) Officer Main found a letter on the floorboard addressed to "James Dent's family" at 240 South Anderson. (10/1/08 Tr. at 23.) According to Officer Main, the letter contained information on how to launder money. (10/1/08 Tr. at 29, 109.)

Dent admitted to the officers that the house contained firearms that had belonged to his father, who had been deceased for more than thirty years. (9/26/08 Tr. at 50, 131-33.) He also admitted that he could not be around guns because he was a convicted felon. (9/26/08 Tr. at 50, 132.)

In the east bedroom, there was a bed and some male clothing consistent with Dent's size. (9/26/08 Tr. at 53-54.) On top of the dresser there was a baggie containing a tannish brown residue consistent in texture and color with heroin. (9/26/08 Tr. at 54-57.) Officer Janczarek found two identification cards bearing Dent's name and several other items with Dent's name and address at 240 South Anderson, including documents related to the Cadillac and Explorer. (9/26/08 Tr. at 58-59, 62-63.) Officer Janczarek did not find any documents related to other people. (9/26/08 Tr. at 102.) There were no firearms found in the east bedroom (9/26/08 Tr. at 67, 85.)

The west bedroom had women's clothing in it. (10/1/08 Tr. at 32.) Inside the closet, there were clothes hanging and in between the clothes was a 12-gauge shotgun with a shortened barrel. (10/1/08 Tr. at 34, 36.) Behind the clothes was a .22-caliber rifle. (10/1/08 Tr. at 35.) On a dresser, there were envelopes containing $9,665 in U.S. currency. (10/1/08 Tr. at 38.) Officer Main also found six boxes of ammunition on the floor, including .45-caliber, 200 range jacketed hollow points and ammunition for an assault rifle. (10/1/08 Tr. at 41-43.) None of the ammunition matched the firearms found in the bedroom. (10/1/08 Tr. at 45.) Officers found another 12-gauge shotgun in the closet of the third bedroom. (10/1/08 Tr. at 46.)

Dent told the police that he was living at 240 South Anderson because there was black mold in his Detroit home. (9/26/08 Tr. at 104-05.)

Officer Main opined that the evidence presented in this case is consistent with intent to deliver and distribute illegal drugs rather than personal use. (10/1/08 Tr. at 59-60.) Officer Main based his conclusion on factors such as the amount of cocaine, the several boxes of plastic baggies, the digital scale, the aluminum foil and plastic wrap, the electric grinder, the sifters, the amount of currency and the firearms. (10/1/08 Tr. at 60-63.) Officer Main also testified that Dent's observed actions, what appeared to be hand-to-hand drug transactions, were consistent with drug trafficking. (10/1/08 Tr. at 101, 103.)

Evelyn Dent testified on her son's behalf. (10/2/08 Tr. at 33.) Ms. Dent testified that

Dent comes and goes from her home at 240 South Anderson. (10/2/08 Tr. at 35.) She also explained that some of her children receive mail at her house. (10/2/08 Tr. at 42.) Ms. Dent testified that Dent lived in Detroit, but that he had been living with her because of a black mold problem in his home. (10/2/08 Tr. at 69, 71.)

Ms. Dent was not present when the search warrant was executed. (10/2/08 Tr. at 43.) Upon returning from shopping, she saw the search occurring but she just kept going. (10/2/08 Tr. at 45.) Ms. Dent had "nothing to hide so [she] just went on." (10/2/08 Tr. at 45.) The guns in her closet belonged to her husband. (10/2/08 Tr. at 53.) She said the ammunition came from her brother in the 1980s or 1990s. (10/2/08 Tr. at 56-57.) At no point during the investigation or pendency of the case did Ms. Dent tell anyone about the ownership of the firearms. (10/2/08 Tr. at 80-81.) During a phone call with the prosecutor a few days before trial, she could not articulate what she planned to testify to regarding the firearms; she had to call trial counsel to find out. (10/2/08 Tr. at 82.)

According to Ms. Dent, the money that was recovered during the search warrant belongs to her from gifts, payment to care for children, and Social Security and Veterans Benefits from her mother. (10/2/08 Tr. at 61-62.) Ms. Dent had been accumulating the money since 2004. (10/2/08 Tr. at 63.) She intended to give it to her children in the event that she or her mother died. (10/2/08 Tr. at 63.) She never told anyone about the money during the pendency of Dent's case. (10/2/08 Tr. at 81.)

Resp. Answer, pp. 4-9.

Following his convictions and sentencing, Petitioner pursued an appeal of right with the Michigan Court of Appeals raising the following claims:

I.      The Court violated Defendant's right to be free from unreasonable search and seizure under the Fourth Amendment when it declined to suppress evidence seized under a warrant where the supporting affidavit failed to establish probable cause to believe that evidence would be found at the stated location in a case where the good faith exception is inapplicable.

II.     Defendant is entitled to a new trial where plain error occurred in the trial court's failure to instruct the jury on the difference between expert witness testimony and fact testimony where a police officer at trial was a fact witness and at the same time gave expert opinions regarding evidence he personally seized in the execution of a search warrant.

III.    Defendant was denied due process when he was convicted of

possession of a firearm during the commission of a felony where there was legally insufficient evidence of constructive possession of any firearm.

IV.     Defendant must be resentenced where an objected-to error in the scoring of Prior Record Variable Two inflated the sentencing range for the offense of possession with intent to deliver cocaine.

The court denied relief on those claims and affirmed Petitioner's convictions and sentences. *People v. Dent*, No. 290832, 2010 WL 3656028, *1-9 (Mich. Ct. App. Sept. 21, 2010) (unpublished). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court raising the same claims, which was denied in a standard order. *People v. Dent*, 489 Mich. 870, 795 N.W.2d 594 (2011).

Petitioner then filed a motion for relief from judgment with the state trial court raising the following claims:

I.      Since false material facts in the affidavit in support of the search warrant were knowingly inserted/mad with reckless disregard for the truth, and intentionally omitted consequential negating facts that was necessary to the finding of probable cause and improperly withheld from prior fact-finder.

II.     There was prosecutorial misconduct where the prosecution denied Defendant of his 5th and 14th Amendment rights to the compulsory process and due process where the prosecution denied Defendant's only witness immunity to willfully distort the truth-finding process.

III.    Defendant was deprived of his right to effective assistance of counsel, guaranteed by the United States and Michigan Constitutions, where his trial counsel failed to challenge/present known essential information to the prior fact-finder, denying Defendant of his only substantial defense, and failed to object/preserve for appeal the prosecution's denial of Defendant's only witness immunity, denying Defendant the right of compulsory process.

The trial court denied the motion pursuant to Michigan Court Rule 6.508(D)(3) finding that Petitioner failed to establish good cause for failing to raise the claims on direct appeal and actual

prejudice. *People v. Dent*, No. 07-216132-FH (Oakland Co. Cir. Ct. June 1, 2012). Petitioner then

filed a motion for reconsideration raising an additional conflict of interest of trial counsel claim and

ineffective assistance of appellate counsel claims. The court denied the motion. *People v. Dent*, No.

07-216132-FH (Oakland Co. Cir. Ct. June 29, 2012). Petitioner then filed a delayed application for

leave to appeal with the Michigan Court of Appeals, which was denied "for failure to meet the

burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Dent*, No. 313647

(Mich. Ct. App. Oct. 8, 2013). Petitioner also filed an application for leave to appeal with the

Michigan Supreme Court, which was similarly denied. *People v. Dent*, 495 Mich. 979, 843 N.W.2d

897 (2014).[1]

Petitioner thereafter filed the instant habeas petition. He raises the following claims:

I.      The State violated Petitioner's right to be free from unreasonable
        search and seizure under the 4th Amendment.

II.     Petitioner was denied his 6th Amendment right to adequate effective
        assistance of trial counsel.

III.    Prosecutorial misconduct denied Petitioner his 5th, 6th, and 14th
        Amendment rights to fair trial, conflict-free representation.

IV.     Petitioner was denied his 6th Amendment right to adequate effective
        assistance of appellate counsel.

Respondent has filed an answer to the petition contending that it should be denied because the

claims lack merit and/or are barred by procedural default. Petitioner has filed a reply to that answer.

---

[1]During the pendency of Petitioner's state collateral review proceedings, he filed an
initial federal habeas petition, which was dismissed without prejudice on exhaustion grounds.
*See Dent v. Bergh*, No. 4:12-CV-14356, 2012 WL 5389707 (E.D. Mich. Nov. 2, 2012).

## III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme

Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*; *see also White v. Woodall*, _ U.S. _, 134 S. Ct. 1697, 1702 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, _ U.S. _, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be

reasonable. *Woods v. Etherton*, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, _ U.S. _ 135 S. Ct. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See*

28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.    Analysis

### A.    Fourth Amendment Claim

Petitioner first asserts that he is entitled to habeas relief because the trial court erred in denying his motion to suppress the evidence that was seized during the execution of the search warrant in violation of his Fourth Amendment rights. Respondent contends that this claim is not cognizable on federal habeas review and that it lacks merit.

Federal courts will not address a Fourth Amendment claim upon habeas review if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the state's corrective processes. *See Stone v. Powell*, 428 U.S. 465, 494-95 (1976). A court must perform two distinct inquiries when determining whether a petitioner may raise a claim of illegal arrest in a habeas action. First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (quoting *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982)).

"Michigan has a procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim." *Robinson v. Jackson*, 366 F. Supp. 2d 524, 527 (E.D. Mich. 2005). This procedural mechanism is a motion to suppress, ordinarily filed

before trial. *See People v. Ferguson*, 376 Mich. 90, 93-94, 135 N.W.2d 357, 358-59 (1965) (describing the availability of a pre-trial motion to suppress); *see also People v. Harris*, 95 Mich. App. 507, 509, 291 N.W.2d 97, 99 (1980) (analyzing the legality of a warrantless search, seizure, and arrest even though raised for the first time on appeal). Consequently, Petitioner is entitled to relief on this issue only if he establishes that he was prevented from litigating the Fourth Amendment issue by a failure of Michigan's procedural mechanism.

Petitioner makes no such showing. The record reveals that he moved to suppress the evidence in the state trial court, but his motion was denied. He then raised the Fourth Amendment issue on direct appeal before the Michigan Court of Appeals in his appeal of right and before the Michigan Supreme Court in his application for leave to appeal, but was denied relief. He also raised a Fourth Amendment claim on collateral review in the state courts, but was denied relief. Consequently, it is clear that the Michigan courts were cognizant of Petitioner's Fourth Amendment claim and that he received all of the process that he was due. Petitioner's Fourth Amendment claim is therefore not cognizable on habeas review pursuant to *Stone v. Powell*. Habeas relief is not warranted on this claim.

### B. Procedural Default

Respondent contends that Petitioner's remaining habeas claims concerning the effectiveness of trial counsel, the conduct of the prosecutor, and the effectiveness of appellate counsel are barred by procedural default (and lack merit). It is well-settled, however, that federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)); *see also Arias v. Hudson*, 589 F.3d 315, 316 (6th Cir. 2009) (citing

*Lambrix*, 520 U.S. at 525). The Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the procedural default issues are complicated, intertwined with some of the substantive issues, and the substantive issues are easier to resolve. Consequently, the interests of judicial economy are best served by addressing the merits of the claims. With respect to those claims that have not been adjudicated on the merits in the state courts, § 2254(d) is inapplicable and the claims are subject to de novo review. *See Dando v. Yukins*, 461 F.3d 791, 796 (6th Cir. 2006).[2]

### C. Ineffective Assistance of Trial Counsel Claims

Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective. He asserts that trial counsel had a conflict of interest due to a prior representation of potential witness Howell McCullum in another drug case. Although not entirely clear from his pleadings, he also seems to assert that trial counsel was ineffective for failing to investigate Howell McCullum and discover that he was never arrested or charged with the drug buys charged in the warrant affidavit and for failing to object to the prosecution's decision not to grant Howell McCullum immunity. Respondent contends that these claims lack merit. Petitioner first raised such ineffective assistance of trial counsel issues in the state courts on post-conviction collateral review and the state courts denied relief pursuant to Michigan Court Rule 6.508(D).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant

---

[2]The Court notes that it would reach the same result on the merits of the claims under either a deferential or de novo standard of review.

the right to the effective assistance of counsel. In order to establish ineffective assistance of counsel, the petitioner must show "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). In determining whether counsel's performance was deficient,

> [t]he court must ... determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance .... At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland,* 466 U.S. at 690. Judicial scrutiny of counsel's performance is thus "highly deferential." *Id*. at 689. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

A criminal defendant is also entitled to the effective assistance of counsel free from conflict. *See Holloway v. Arkansas*, 435 U.S. 475, 483-84 (1978). When an actual conflict of interest exists, prejudice may be presumed. *See Cuyler v. Sullivan*, 446 U.S. 335, 348-50 (1980). To demonstrate such an actual conflict of interest, a petitioner must show that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected counsel's performance. *See Mickens v. Taylor*, 535 U.S. 162, 171-72, n. 5 (2002); *United States v. Hall*, 200 F.3d 962, 965 (6th Cir. 2000). "[I]f the conflict is as to a matter that is irrelevant or the conflict is merely hypothetical, there is no constitutional violation." *Moss v. United States*, 323 F.3d 445, 463-64 (6th Cir. 2003). A petitioner must point to specific instances in the record which suggest an actual conflict or impairment of his interests. *Thomas v. Foltz*, 818 F.2d 476, 481 (6th Cir. 1987). The standard requires "a choice by counsel caused by the conflict of interest." *McFarland v. Yukins*,

356 F.3d 688, 706 (6th Cir. 2004).

Such heightened protection for conflict of interest cases applies to cases of joint representation (simultaneous trial of co-defendants) and multiple concurrent representation (co-defendants or witnesses in ongoing cases), not successive representation. *Mickens*, 535 U.S. at 175-76; *Stewart v. Wolfenbarger*, 468 F.3d 338, 351 (6th Cir. 2006). The Sixth Circuit has indicated that the *Cuyler* standard applies only to multiple concurrent representation as the Supreme Court has yet to extend it to other contexts. *See Jalowiec v. Bradshaw*, 657 F.3d 293, 314-15 (6th Cir. 2011) (discussing cases); *Gillard v. Mitchell*, 445 F.3d 883, 891 (6th Cir. 2006) (successive representation); *Whiting v. Burt*, 395 F.3d 602, 618-19 (6th Cir. 2005) (same counsel at trial and on appeal); *Lordi v. Ishee*, 384 F.3d 189, 193 (6th Cir. 2004) (successive representation); *Smith v. Hofbauer*, 312 F.3d 809, 817 (6th Cir. 2002) (personal conflict). "Successive representation occurs where defense counsel has previously represented a co-defendant or trial witness." *Moss*, 323 F.3d at 459.

The record indicates that trial counsel's representation of Petitioner was successive to his representation of Howell McCullum. Trial counsel represented Howard McCullum in a 2006 drug case. *See* Pet. App'x B (3/2/06 Howell McCullum Sent. Judg.). Petitioner states that Howell McCullum was on parole from that conviction at the time of the events at issue in this case. The search warrant affidavits in this case were signed on March 24, 2007, *see* Pet. App'x A, and the search was conducted on that same date. *See* 9/26/08 Trial Tr., p. 160. Petitioner was arraigned on August 10, 2007 and bound over for trial. *See* Oakland Co. Dkt., Case No. 2007-216132-FH. Thus, trial counsel's representation was successive, not joint or multiple concurrent, such that there is no presumption of prejudice.

Petitioner fails to establish that an actual conflict of interest existed, that trial counsel was deficient, and/or that he was prejudiced by trial counsel's conduct as required under *Strickland*. The record indicates that Howell McCullum went to trial counsel's office the day before Petitioner's trial, that counsel told him that he needed to consult independent counsel, and that counsel did not give him any legal advice. *See* 9/25/08 Trial Tr., pp. 6-8. Howell McCullum appeared at trial and was represented by another attorney. *Id.* at pp. 4-6. After consulting with his own counsel, he invoked his Fifth Amendment rights and refused to testify at trial. *Id.* at p. 5-6. Petitioner also fails to show that counsel did or did not do something in his case in order to protect McCullum. Petitioner's assertions of conflict and prejudice are conclusory and lack factual support. Petitioner fails to show that trial counsel actively represented conflicting interests and/or that an actual conflict of interest adversely affected counsel's performance.

Petitioner further fails to show that trial counsel did not sufficiently investigate Howell McCullum or otherwise produce him at trial. The record indicates that counsel knew of Howell McCullum's involvement in the case and anticipated that he might serve as a defense witness. *Id.* at pp. 4, 7. Counsel, however, was prevented from using Howell McCullum as witness due to his invocation of his Fifth Amendment rights and the prosecution's decision not to call him as a witness and grant him immunity. *Id.* at p. 7. Counsel could not force the prosecution to grant Howell McCullum immunity. There is no constitutional right to compel a prosecutor to immunize a defense witness. *See, e.g, Landrum v. Mitchell*, 625 F.3d 905, 923 (6th Cir. 2010) (discussing case law). Nor does such a right exist under Michigan law. *See, e.g., People v. Schmidt*, 183 Mich. App. 817, 827-32, 455 N.W.2d 430 (1990). There is also no indication that Howell McCullum's invocation of his Fifth Amendment rights was improper. To be sure, the record indicates that he

15

delivered drugs to a confidential informant working for the police during the investigation that led to the search of Petitioner's residence and vehicles, his arrest, and, ultimately, his convictions. Petitioner fails to establish that trial counsel erred in this regard.

Petitioner also cannot establish that he was prejudiced by trial counsel's conduct. Petitioner asserts that counsel failed to discover that Howell McCullum was never prosecuted for his delivery of drugs in this case and that such information would have benefitted the defense. However, the fact that Howell McCullum was not arrested or prosecuted, even if true, does not mean that the drug buys did not occur as alleged by the police. Petitioner also asserts that Howell McCullum told him and another man that the drug buys never happened (and that counsel should have discovered this information before trial). Petitioner submits his own affidavit and one from the other man in support of this assertion, but fails to submit an affidavit from Howell McCullum or other reliable evidence. Such hearsay and conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See, e.g., Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis for an evidentiary hearing in habeas proceedings). Moreover, and perhaps more importantly, given that Howell McCullum invoked his Fifth Amendment rights at trial, he became unavailable to provide any testimony favorable (or unfavorable) to the defense. As a result, Petitioner cannot show that he was prejudiced by trial counsel's alleged failure to investigate or present evidence from Howell McCullum. The prosecution also presented significant evidence of Petitioner's guilt, including the police testimony and the physical evidence from the search of his residence and

vehicles, at trial. Petitioner thus fails to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on these claims.

### C. Prosecutorial Misconduct Claims

Petitioner also asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct. He alleges that the prosecutor knew that trial counsel had a conflict of interest (due to the prior representation of Howell McCullum) and colluded with defense counsel to keep it from the trial court. He also seems to assert that the prosecutor improperly declined to grant Howell McCullum immunity. Respondent contends that these claims lack merit. Petitioner first raised prosecutorial misconduct issues in his motion for relief from judgment and the state courts denied relief pursuant to Michigan Court Rule 6.508(D).

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a prosecutorial misconduct claim, a habeas petitioner must show that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, _ U.S. _, 132 S. Ct. 2148, 2153 (2012) (confirming that *Donnelly/Darden* is the proper standard).

Petitioner fails to establish that the prosecutor's conduct rendered his trial fundamentally unfair. As an initial matter, the Court finds that Petitioner cannot prevail on his claim that the prosecutor colluded with trial counsel to conceal a conflict of interest from the court given this Court's determination that trial counsel did not operate under a conflict of interest and provided effective assistance of counsel.

17

Petitioner also fails to show that the prosecutor violated his constitutional rights by declining to grant Howell McCullum immunity when he invoked his Fifth Amendment privilege and refused to testify at trial. It is well-established that a criminal defendant has a due process right to present defense witnesses. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *Johnson v. Bell*, 525 F.3d 466, 480 (6th Cir. 2008). The fact that a witness decides to invoke his or her Fifth Amendment right not to testify, however, does not deny a defendant a fair trial. *United States v. Stapleton*, 297 F. App'x 413, 430 (6th Cir. 2008). "'*Washington v. Texas* does not hold that a defendant has the right to present any and all witnesses.' *Davis v. Straub*, 430 F.3d 281, 290 (6th Cir. 2005). As the Supreme Court stated in *Washington*, 'Nothing in this opinion should be construed as disapproving testimonial privileges, such as the privilege against self-incrimination.' *Washington*, 388 U.S. at 23 n. 21." *Id.*

Moreover, prosecutors have significant discretion in determining whether to grant a witness immunity and separation of powers principles prevent a court from either granting immunity to a witness or ordering the prosecution to do so. *See United States v. Pennell*, 737 F.2d 521, 527 (6th Cir. 1984). The Michigan courts apply the same principles. *See Schmidt,* 183 Mich. App. at 827-32. Petitioner cites no clearly established United States Supreme Court precedent which holds that a prosecutor must grant immunity to a potential defense witness who invokes his or her Fifth Amendment privilege. To the contrary, in federal cases, the Supreme Court has unequivocally held that "[n]o court has authority to immunize a witness," *Pillsbury Co. v. Conboy*, 459 U.S. 248, 261 (1983), and the Sixth Circuit has "consistently held that a district court is without authority to either grant immunity to a witness who asserts his Fifth Amendment privilege against self incrimination or to force the government to do so." *United States v. Talley*, 164 F.3d 989, 997 (6th Cir. 1999);

*see also United States v. Emuegbunam*, 268 F.3d 377, 401 (6th Cir. 2001).

The Sixth Circuit has discussed, but not accepted, two limited circumstances in which a district court might be warranted in granting immunity as an exercise of the court's inherent power: (1) where a witness possesses exculpatory testimony that is essential to an effective defense and that strongly outweighs the Government's interest in declining to offer immunity, and (2) where the prosecutor has engaged in misconduct. *Emuegbunam*, 268 F.3d at 401 & n.5; *Talley*, 164 F.3d at 997-98. Aside from a narrow situation where the government grants immunity to its own witnesses but denies immunity to defense witnesses, the Sixth Circuit has rejected the "effective defense" exception. *See Emuegbunam*, 268 F.3d at 401 & n.5 (citing *United States v. Mohney*, 949 F.2d 1397, 1401 (6th Cir. 1991)); *Talley*, 164 F.3d at 997-98. As the Sixth Circuit has explained, judicially-compelled immunity would "raise separation of powers concerns because the decision of whom to prosecute is soundly within the discretion of the prosecutor, not the courts," and would "force courts to place the government in the undesirable position of choosing whether to prosecute the defendant or the witness." *Talley*, 164 F.3d at 997 (citing cases). With regard to prosecutorial misconduct, such an exception would only apply where "the prosecution abuses its discretion by intentionally attempting to distort the fact-finding process." *Emuegbunam*, 268 F.3d at 401 (citing *Mohney*, 949 F.2d at 1402). The Sixth Circuit has yet to decide whether immunity represents a valid remedy for such conduct, *Talley*, 164 F.3d at 998, but any immunity under this theory would "not be granted lightly." *Mohney*, 949 F.2d at 1402.

Again, however, there is no clearly established Supreme Court precedent which entitles Petitioner to habeas relief based upon any such exceptions to the prosecutor's discretion in deciding whether to grant immunity to a witness who invokes his or her Fifth Amendment privilege. Even

assuming that Sixth Circuit case law could provide such an avenue, Petitioner makes no such showing. He neither alleges nor establishes that the prosecutor granted immunity to prosecution witnesses but denied immunity to defense witnesses. He also fails to present facts which show that the prosecutor abused his discretion by intentionally attempting to distort the fact-finding process. The prosecutor was not required to grant Howell McCullum immunity and there is no indication that he declined to do so for any improper reason. Habeas relief is not warranted on these claims.

### D. Ineffective Assistance of Appellate Counsel Claims

Lastly, Petitioner asserts that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise his collateral review issues on direct appeal in the state courts. In particular, he asserts that appellate counsel was ineffective for failing to investigate why trial counsel did not investigate or call Howell McCullum as a witness, for failing to seek a remand regarding trial counsel's conduct, for failing to act on contradictory testimony, and for failing to investigate trial counsel's alleged conflict of interest. Respondent contends that these claims lack merit. Petitioner first raised these issues in his motion for relief from judgment and the state courts denied relief pursuant to Michigan Court Rule 6.508(D).

As noted, in order to establish ineffective assistance of counsel, the petitioner must show "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687; *O'Hara*, 24 F.3d at 828. In determining whether counsel's performance was deficient,

> [t]he court must ... determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance .... At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland,* 466 U.S. at 690. Judicial scrutiny of counsel's performance is thus "highly deferential." *Id*. at 689. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the … goal of vigorous and effective advocacy …. Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner fails to show that by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel raised substantial claims on direct appeal including a Fourth Amendment claim challenging the trial court's probable cause determination and refusal to

suppress the evidence seized during the search of the residence and vehicles. a jury instruction claim, a sufficiency of the evidence claim, and sentencing claims. None of the collateral review claims are "dead-bang winners," for the reasons discussed herein, and given the significant evidence of guilt presented at trial. Petitioner fails to establish that appellate counsel erred and/or that he was prejudiced by counsel's conduct as required by *Strickland*, 466 U.S. at 687. Habeas relief is not warranted on these claims.

## V.     <u>Conclusion</u>

For the reasons stated, the Court concludes that Petitioner's claims lack merit and that he is not entitled to federal habeas relief. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Having conducted the requisite review, the Court concludes that Petitioner fails to make a substantial showing of the denial of a constitutional right as to his claims. Accordingly, the Court **DENIES** a certificate of appealability. The Court also **DENIES** leave to proceed in forma pauperis on appeal as an appeal cannot be taken in good faith. *See* Fed. R. App. P. 24(a). This case is

**CLOSED**.

　　**IT IS SO ORDERED**.

　　　　　　　　　　　　　　s/John Corbett O'Meara
　　　　　　　　　　　　　　United States District Judge
Date:　September 13, 2017




　　　I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, September 13, 2017, using the ECF system and/or ordinary mail.


　　　　　　　　　　　　　　s/William Barkholz
　　　　　　　　　　　　　　Case Manager